IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

FILED
A.M. _____ 9-17 __ 20 14
DAVID J. MALAND, CLERK
U.S. DISTRICT COURT
By_____
DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 1:13-CR-96(5) |
| | § | (Judge Marcia Crone) |
| RONELLE PORTER | § | |

## FACTUAL BASIS AND STIPULATION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorney in and for the Eastern District of Texas, joined by **Ronelle Porter,** defendant, and his counsel of record, Todd Clemons, and presents this factual basis and stipulation in support of the defendant's plea of guilty to Count One of the indictment filed herein, and, in support thereof, would show the following:

1. That, defendant, hereby stipulates and agrees as to the facts recited in paragraph 5. Defendant stipulates and agrees to the truth of all matters set forth in these paragraphs in this factual basis and stipulation, and agrees that such admission may be used by the Court in support of his plea of guilty to Count One of the indictment, alleging a violation of 21 U.S.C. § 846, conspiracy to possess with intent to deliver five kilograms or more of a mixture or substance containing a detectable amount of a Schedule II controlled substance, namely, cocaine HCL.

2. That the defendant, who is pleading guilty to such indictment, is one and the same person charged in the indictment.

3. That the crime alleged in the indictment occurred on or about the dates and places specified in the indictment;

4. That the events described in the indictment occurred in the Eastern District of Texas and elsewhere;

5. That, had this case proceeded to trial, the government would have proven each and every essential element of the offense, beyond a reasonable doubt, through the testimony of witnesses, including expert witnesses, and through exhibits, which would have demonstrated the following:

As to Count One:

Overview of the criminal scheme:

(a) Beginning in the early 2000s, the exact date being unknown, Cesar I. Alvarez-Barrera, a/k/a "Big C", a/k/a "Gordo" (Barrera) began to distribute cocaine HCL to drug traffickers in the Houston, Texas area, to include Frank Young (Young), Autrey White (White), Warren Randle (Randle), Donald Dixon (Dixon) and Donald Woods (Woods). Over time, Barrera advanced in the drug trade and ultimately became a large scale distributor of cocaine HCL with multi-kilogram customers both inside and outside the state of Texas. Barrera also distributed other controlled substances, to include marijuana, to some of these same customers;

(b) Once Barrera had achieved sufficient status with Mexican sources of cocaine HCL, he began to receive regular multi-kilogram shipments of cocaine HCL from those sources of supply. That cocaine, once smuggled across the Rio Grande river in southern Texas, was then transported by various means to stash house distribution points operated or used by Barrera in and around the Houston, Texas metropolitan area, to include: 19018 Hamish Rd., Tomball, TX, and 23705 Lenze, Rd., Spring, TX. Couriers such as Jaime Vivero-Flores, a/k/a "Gati" (Vivero), Jesus Amaya-Saenz, a/k/a "Pelon" (Amaya), Alfredo Soto-Valdez, a/k/a "Freddy" (Soto), and Sandra Calderon-Martinez (Calderon) were used to bring the cocaine HCL from the "Valley" to Houston for delivery to Barrera;

(c) Barrera distributed these multi-kilogram loads to both local customers and co-conspirators located in other states of the United States with the assistance of

couriers such as Doug Waindel (Waindel), Edwardo Silva (Silva) Mark Lottig (Lottig) and others who worked at the direction of Barrera. Those couriers received, stored and delivered cocaine HCL in bulk to local distributors such as Dixon and who, in turn, distributed cocaine to customers both inside and outside the state of Texas;

(d) Local distribution was achieved via the use of cellular telephones and various vehicles. When local customers were in need of cocaine HCL they typically would contact Barrera via cellular telephone. Once an agreed upon price had been reached between Barrera and local customers, Barrera would coordinate with couriers such as Waindel to meet with the customer for delivery of the cocaine HCL purchased;

(e) Couriers, once contacted, would go to a location where they could meet the local customer without drawing attention from law enforcement. Sometimes these locations were in residential areas on side streets or commercial parking lots and at other times rural locations associated with Barrera. Barrera would also distribute cocaine HCL to customers personally from his residence located at 13511 Boudreaux Estates Drive, Tomball, Texas;

(f) One of Barrera's largest Texas customers was Dixon. Dixon was a cocaine distributor who supplied Nacogdoches, Texas, Eastern District of Texas. During the course of Barrera's criminal episode, Dixon received more than one-thousand (1,000) kilograms of cocaine HCL and distributed them in the Eastern District of Texas;

(g) During Barrera's criminal episode he was receiving multi-kilogram shipments of cocaine HCL from multiple sources of supply, to include Miguel Zamora (Zamora), David Bazan (Bazan), Juan Correa, a/k/a "Tio" (Correa) and Amador Saldana, a/k/a/ "Mustard" (Saldana);

(h) During the latter part of 2012, DEA investigators employed Court authorized wire-tap interceptions of Barrera's, Correa's and Saldana's cellular phones to intercept drug trafficking related conversations between the principals of the Barrera distribution scheme. As a result of those interceptions, investigators intercepted conversations regarding the distribution of in excess of forty (40) kilograms of cocaine HCL that had been received from Correa and Saldana;

(i) In December of 2012, Barrera and Saldana were intercepted discussing the expansion of the Barrea distribution scheme to include the establishment of a distribution point in Atlanta, Georgia, that was to be operated by Barrera courier and stash house operator Waindel. Search warrant execution at Waindel's residence in Atlanta, Georgia on April 10, 2013 produced ten (10) kilograms and

two-hundred-thousand-dollars ($200,000.00) in tainted funds generated by the partial sale of a twenty (20) kilograms shipment of cocaine HCL that had been distributed to Waindel in Atlanta, via transportation through the Eastern District of Texas;

(j) The large amounts of tainted funds generated by the criminal scheme were transported back to Mexico and elsewhere via bulk shipments of United States funds secreted in hidden compartments and voids in motor vehicles and also by body carriers. These funds were transported by couriers such as Silva and Garza, who had knowledge of the illicit nature of the currency transported. Those couriers were employed by the scheme's principals to transport those bulk shipments of cash in order to avoid applicable reporting requirements and to conceal their ownership. Those couriers were also aware that the funds were intended to both repay drug debts and to be returned to general circulation after being used to purchase legitimate goods by individuals who had no legitimate sources of income;

(k) Law enforcement agencies became aware of the activities of sub-components of the scheme in the 2000s. From that time forward, a number of independent investigations made controlled deliveries to Barrera of seizures (of both money and drugs) from Barrera associates. In addition, the various investigations of the Barrera scheme produced a number of cooperating defendants who would have testified at trial that they had received cocaine HCL and/or marijuana from Barrera during his criminal episode. Those seizures and deliveries by Barrera to cooperating defendants include:

| | Date | Location | Co-conspirator | Contraband |
|---|---|---|---|---|
| 1) | 2003-2007 | Houston, TX | Donald Woods | 75 kilos Cocaine HCL 800 lbs. MJ |
| 2) | 2004 | Houston, TX | Warren Randle | 60 kilos Cocaine HCL |
| 3) | 5/9/2006 | 13511 Boudreaux Estates Drive, Tomball, Texas. | Miguel Zamora | 15 kilos Cocaine HCL controlled delivery. |
| 4) | 2006 | Greenville, SC via EDTX | Frank Young | 40 kilos Cocaine HCL |
| 5) | 2006 | Charlotte, NC via EDTX | Frank Young | 40 kilos Cocaine HCL |

| # | Date | Location | Names | Amount |
|---|---|---|---|---|
| 6) | 2007-2012 | Nacogdoches, TX | Donald Dixon<br>Juan Correa<br>Amador Saldana<br>Kerry Griffin<br>Anthony Fowler<br>Cederic Fowler<br>Rodney Stevenson | 1,000+ kilos Cocaine HCL<br>(*2.8 kilos seized from Dixon)<br>(*5.0 kilos seized from C. Fowler) |
| 7) | 2007 | Atlanta, GA via EDTX | Frank Young | 108 lbs. MJ |
| 8) | 6/8/2009 | Conroe, TX | Kerry Griffin<br>Donald Dixon<br>Elmore Thacker | $124,698.00* |
| 9) | 11/13/2009 | Houston, TX | Macaria Garza | $427,823.00* |
| 10) | 2009-2010 | Houston, TX | Eduardo Silva<br>Martin Hinojosa<br>Juan C. Hinojosa | 150 kilos Cocaine HCL |
| 11) | 2010-2011 | Houston, TX | David Bazan<br>Martin Hinojosa<br>Juan C. Hinojosa | 50 kilos Cocaine HCL |
| 12) | 2010-2011 | Houston, TX | Martin, Hinojosa<br>Juan C. Hinojosa | $500,000.00 |
| 13) | 4/30/2012 | Houston, TX | Donald Dixon | $183,000.00* |
| 14) | 5/25/2012 | Nacogdoches, TX | Kerry Griffin<br>Elmor Thacker | $18,450.00* |
| 15) | 6/25/2012 | Houston, TX | Jaime Vivero-Flores<br>Amador Saldana<br>Doug Waindel | 6 kilos Cocaine HCL (*3 seized) |
| 16) | 8/1/2012 | Houston, TX | Jesus Amaya-Saenz<br>Sandra Calderon-Martinez<br>Juan Correa | 12 kilos* cocaine HCL |

| | | | |
|---|---|---|---|
| 17) 8/5/2012 | Houston, TX | Juan Correa<br>Alfredo Soto-Valdez | 8 kilos*<br>Cocaine HCL |
| 18) 4/10/2013 | Atlanta, GA<br>via EDTX | Doug Waindel<br>Amador Saldana | 10 kilos*<br>Cocaine HCL<br>$185,768.00* |

**Note: " * " indicates physical seizures.**

(l) Properly qualified laboratory technicians would have testified that the contraband seized during the period of the defendant's criminal episode was cocaine HCL and marijuana, in the amounts indicated above;

As to **Ronelle Porter's** role in the conspiracy:

(m) **Ronelle Porter (Porter)** was a Louisiana based courier/distributor for the Barrera DTO. In that role he would travel from the Lafayette, LA area to receive multi-kilogram loads of cocaine HCL from Barrera in Houston, TX. **Porter** would then transport that contraband back to DTO customers in Louisiana.

(n) **Porter** was intercepted engaging in drug related conversations during the course of a court authorized Title III interception of Barrera's telephone.

(o) During the period of his active involvement in the scheme, **Porter** agrees and the parties stipulates that he conspired with others to distribute between fifteen (15) and fifty (50) kilograms of cocaine HCL.

DEFENDANT'S SIGNATURE AND ACKNOWLEDGMENT

6. I have read this factual basis and stipulation and the indictment or have had them read to me and have discussed them with my attorney. I fully understand the contents of this factual basis and stipulation and agree without reservation that the United States can prove each of these acts and that it accurately describes the events about my acts and the events as recited as I know them.

Dated: 9-12-14

_____
**Ronelle Porter**
Defendant

### DEFENSE COUNSEL'S SIGNATURE AND ACKNOWLEDGMENT

7. I have read this factual basis and stipulation and the indictment and have reviewed them with my client, **Ronelle Porter**. Based upon my discussions with the defendant, I am satisfied that the defendant understands the factual basis and stipulation as well as the indictment, and is knowingly and voluntarily agreeing to these stipulated facts.

Dated: 9/12/14

_____
Todd Clemons
Attorney for the Defendant


Respectfully submitted,

JOHN M. BALES
UNITED STATES ATTORNEY

_____
John A. Craft
ASSISTANT UNITED STATES ATTORNEY